**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **LINDA DENT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:03CV175 (DF)** |
| | : | |
| **AMERICAN INTERNATIONAL LIFE** | : | |
| **ASSURANCE CO. OF NEW YORK,** | : | |
| | : | |
| **Defendant.** | : | |

**O R D E R**

Plaintiff initiated this action to recover life insurance benefits she asserts she is due as the beneficiary of her son's life insurance policy. Currently before the Court are Plaintiff's Motion for Summary Judgment (tab 26) and Defendant's Motion for Summary Judgment (tab 29).

**I.      STANDARD OF REVIEW**

The Supreme Court has observed, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Under Rule 56, summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c); *see also* **Celotex Corp.**, 477 U.S. at 322.  In reviewing a

motion for summary judgment, the court must view the evidence and all justifiable

inferences in the light most favorable to the non-moving party, but the court may not make

credibility determinations or weigh the evidence.  *See* **Anderson v. Liberty Lobby, Inc.**,

477 U.S. 242, 249 (1986).

## II.    FACTUAL BACKGROUND

Plaintiff's son, the decedent, Derek Morgan, was an employee of Wal-Mart Stores,

Inc. ("Wal-Mart").  As a part of his employment, Mr. Morgan was eligible to participate in

the Associates Health and Welfare Plan ("the Plan").  One component of the Plan was

Group Term Life Insurance Policy, number GL-10722-01, ("the Policy") that was funded

and administered by Defendant.  Two types of coverage were provided for under the

Policy: basic life insurance and optional life insurance.  Basic life insurance has a benefit

amount of one times the annual earnings up to a maximum of $50,000.00.  Tab 33, Ex. 3

to Compl., Pg. 9.  There is a guaranteed issue amount of $50,000.00 for basic life

insurance.  Guaranteed Issue Amount, for both types of insurance, is defined as:

> the amount of insurance that will be issued to an insured person without
> Evidence of Insurability.  The Guaranteed Issue Amount for an insured
> person's life insurance is shown in the schedule.  For amounts in excess of
> the Guaranteed Issue Amount, Evidence of Insurability satisfactory to the
> company must be provided at the insured's expense.

Tab 33, Ex. 3 to Compl., Pg. 9.  The second type of insurance offered was optional life

insurance whereby employees could elect additional coverage and have the premium

amount deducted from their paycheck.  Mr. Morgan exercised the option for additional life

insurance; he selected option two that had a benefit amount of $25,000.00. The optional life insurance had a Guaranteed Issue Amount of $25,000.00.

The Policy also provided for a thirty-one day conversion period during which time employees, who were no longer a member of the eligible class, could elect to convert coverage under the Policy to individual coverage. Tab 33, Ex. 3 to Compl., Pg. 21. The coverage that an employee could convert is "not [ ] more than the amount of Life insurance that is lost under this Policy." Tab 33, Ex. 3 to Compl., Pg. 20. In addition, the Policy provides that should the insured die during the conversion period a death benefit "equal to the maximum amount the Insured could have otherwise converted" will be paid. Tab 33, Ex. 3 to Compl., Pg. 21.

Mr. Morgan left his employment with Wal-Mart on July 20, 2000, and died from smoke inhalation in a house fire on August 20, 2000. Mr. Morgan had not exercised his conversion privilege, but died on the thirty-first day of the conversion period. Plaintiff has received a total of $37,000.00 from Defendant, which represents basic life insurance coverage equal to Mr. Morgan's $12,000.00 annual salary and the $25,000.00 optional life insurance Mr. Morgan carried. Asserting that she is due the Guaranteed Issue Amount of $50,000.00 plus interest, Plaintiff filed this action in the Superior Court of Bibb County, Georgia. Defendant removed the action, which is governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001, to this Court.

## III.   LEGAL ANALYSIS

By their motions for summary judgment the parties seek to have the Court review Defendant's decision to pay Plaintiff life insurance benefits totaling $37,000.00.

3

A.      *Standard for Reviewing Decision*

Even though "ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries," the Supreme Court has done so.  ***Williams v. BellSouth Telecomm., Inc.***, 373 F.3d 1132, 1134 (11th Cir. 2004).  In ***Firestone***, the Supreme Court established three distinct standards of review applicable to the plan administrators' decisions: "(1) de novo where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest."  ***HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.***, 240 F.3d 982, 993 (11th Cir.2001) (quoting ***Buckley v. Metro. Life***, 115 F.3d 936, 939 (11th Cir. 1997)).  To determine the applicable standard of review in this case, the Court "is required to examine 'all of the plan documents.'"  ***Shaw v. Conn. Gen. Life Ins. Co.***, 353 F.3d 1276, 1282 (11th Cir. 2003) (quoting ***Cagle v. Bruner***, 112 F.3d 1510, 1517 (11th Cir. 1997)).  If after examining all the plan documents the Court finds "that the documents grant the claims administrator discretion, then at a minimum, the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious review."  ***HCA***, 240 F.3d at 993.

In considering the parties earlier discovery motions, which included similar arguments to those made by Plaintiff in her summary judgment brief, the Court previously applied the above reasoning to determine the standard of review.  The Court held that "the . . . applicable standard of review for this Court to employ is heightened arbitrary and capricious."  Order *dated* Oct. 7, 2004, Tab 19 Pg. 4.  Consequently, the law of the case doctrines dictates that this Court will continue to follow its earlier holding and apply the

heightened arbitrary and capricious standard of review.  *See* **Toole v. Baxter Healthcare Corp.**, 235 F.3d 1307, 1313 (11th Cir. 2000) ("Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case. ").

> B.     *Review of Benefit Decision*

The Eleventh Circuit has clearly articulated the steps this Court is to follow in reviewing a claims administrator's benefit decision.

> (1) Apply the de novo standard of determine whether the claims benefits-denial decision is wrong (i.e., the court disagrees with the administrator's position); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is de novo wrong and he was vested with discretion in reviewing claims, then determine whether reasonable grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

**Williams**, 373 F.3d at 1138 (internal citations omitted).  This directive gives the Court a clear path to follow in deciding the parties' cross motions for summary judgment. Furthermore, having previously determined the heightened arbitrary and capricious standard of review is applicable, the Court has already decided that the administrator was vested with discretion (step two) and that there is a conflict of interest (step four).  The Court now turns to review the benefit decision at issue.

1.    De Novo Wrong

Plaintiff has received a $37,000.00 benefit.  This amount represents the decedent's $12,000.00 annual salary and the $25,000.00 optional life insurance policy the decedent carried.  However, Plaintiff contends that Defendant's interpretation of Guaranteed Issue Amount is wrong and asserts that she should have recovered an additional $50,000.00, the amount listed as the Guaranteed Issue Amount, for a total of $87,000.00, plus interest.

The Guaranteed Issue Amount is defined as "the amount of insurance to be issued without Evidence of Insurability" and the amount of insurance an employee is eligible to be issued is specified in the Schedule of benefits.   Tab 33, Ex. 3 to Compl., Pg. 9. Unambiguous terms of an insurance contract are to be understood in their 'plain, ordinary, and popular sense.'"  *Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1376-77 (11th Cir. 1998) (quoting *Horace Mann Ins. Co. v. Drury*, 445 S.E.2d 272, 274 (Ga. Ct. App. 1994)).   A plain and ordinary reading of the definition for Guaranteed Issue Amount in Defendant's Policy would render an understanding that Guaranteed Issue Amount is the amount of insurance an employee may be eligible to be issued without presenting any medical evidence.

The insurance industry considers guaranteed issue amount a function of group underwriting.   Group underwriting enables every employee to be issued coverage regardless of medical history.  *See* 263 PLI/Tax 195, Practicing Law Institute (Sept. 22, 1987).  The Eleventh Circuit has not defined nor interpreted Guaranteed Issue Amount. But, other courts have treated the phrase as an industry term that is understood as the amount of insurance able to be issued without any evidence of health.  *See Jackson v.*

*Travelers Ins. Co.*, No. 94 Civ. 5895, 1996 WL 350677 (S.D.N.Y. Jun. 26, 1996) (stating that Guaranteed Issue Amount is the amount that could be obtained regardless of medical history); *see also **Blum v. Spectrum Restaurant Group, Inc.**,* 261 F. Supp. 2d 697 (E.D. Tex. 2003) (stating that Guaranteed Issue Amount was the amount of insurance that does not require proof of good health).  In neither of these instances did the court treat the guaranteed issue amount as a payable benefit, rather it was a phrase that clarified the amount of insurance that an insured could apply for without providing evidence of health.

Given this understanding of Guaranteed Issue Amount, for basic benefit life insurance, the maximum amount of insurance an employee may be issued under the Policy without Evidence of Insurability is $50,000.00.  However, the maximum amount of insurance able to be issued without Evidence of Insurability and the amount an individual employee is actually eligible to be issued are not necessarily the same amount. Specifically, the Guaranteed Issue Amount affords the possibility of being issued $50,000.00 worth of basic benefit life insurance without having to submit any Evidence of Insurability.  But, the only way that the decedent, or any Wal-Mart employee, would be eligible to be issued $50,000.00 worth of basic benefit life insurance is if his beneficiary would be eligible, under the terms set out in the Schedule, to receive a $50,000.00 benefit. The Schedule sets forth that the benefit to be paid is one times the decedent's annual salary, up to a maximum of $50,000.00.  The benefit amount corresponds to annual salary. Had the decedent earned a salary of $50,000.00 then his benefit amount would have matched the amount of insurance he was eligible to be issued without Evidence of Insurability, that is the Guaranteed Issue Amount.  But, in this case, the benefit amount the

7

decedent was eligible to be issued was $12,000.00, so the Guaranteed Issue Amount did not dictate the amount of insurance the decedent was eligible to be issued or the benefit Plaintiff was to receive.

The phrase Guaranteed Issue Amount itself implies the Court's interpretation – the guarantee that Defendant made was to issue $50,000.00 worth of insurance without evidence of insurability to eligible employees, it did not guarantee to pay a $50,000.00 insurance benefit to all beneficiaries. To follow Plaintiff's argument that she is due the full amount of the Guaranteed Issue Amount as the basic life insurance benefit would require that every beneficiary be paid $50,000.00 regardless of the insured's annual salary. This interpretation cannot be followed. The value of a life, according to Defendant, is the life's annual salary, which in this case was $12,000.00, and not a pre-set amount, such as $50,000.00. *See* Tab 33, Ex. 3 to Compl., Pg. 5, 39 (providing in the Schedule of benefits, the basic benefit is "one times annual earnings up to a maximum of $50,000); *see also* Couch on Insurance § 1:39 (3rd ed. 1995) (stating that value of insured life does not specifically match value of policy but is offset by premium charged and premium corresponds with likelihood of paying benefit).

Plaintiff attaches much weight to the deposition testimony of Susan Martin. *See* tab 27, Pl.'s Br. Pg. 11. However, after reading the pages preceding the text Plaintiff quotes, the Court does not find the quotation in Plaintiff's brief instructive. Ms. Martin was asked the value of the Guaranteed Issue Amount and she responded that $50,000.00 was the maximum, that $50,000.00 was the amount, that no more and no less would be issued. *See* Tab 33, Ex. C, Martin Depo. Pg. 16 -17. Plaintiff attempts to use this testimony as

evidence that $50,000.00 was the amount of the benefit.  However, that was not the question Ms. Martin answered – she was asked how much insurance would be issued per the Guaranteed Issue Amount, to which she replied $50,000.00.  That testimony does not state, infer, or suggest that $50,000.00 is the guaranteed benefit amount, it merely states that without evidence of insurability a flat $50,000.00 of basic benefit life insurance would be issued to qualifying employees.

The use and treatment of the phrase Guaranteed Issue Amount in the optional life insurance is further proof of the validity of the Court's interpretation.  The Guaranteed Issue Amount for optional life insurance is $25,000.00, which was also the benefit amount the decedent elected.  Thus, because of the definition of Guaranteed Issue Amount, Plaintiff was able to receive the full amount of her son's optional policy even though he had not submitted Evidence of Insurability.  There is nothing inconsistent about how the phrase is used in the Schedule of benefits for basic life insurance and for optional life insurance.

Furthermore, Plaintiff would not able to recover more than $50,000.00 in total.  The Guaranteed Issue Amount for basic benefit life insurance is $50,000.00.  Evidence of Insurability, which "means a statement or medical evidence of health that determines if a person qualifies for coverage under this Policy," is required before any amount over $50,000.00 will be issued or paid.  Tab 33, Ex. 3 to Compl., Pg. 9.  It is undisputed that Mr. Morgan did not submit any Evidence of Insurability.  *See* Tab 33, Ex. B Mason Depo., Ex. B, Pg. 2 ¶ 3.  Therefore, even if Plaintiff's interpretation of Guaranteed Issue Amount were correct, the most Plaintiff would have been able to receive is $50,000.00, not the $62,000.00 she asserts would be due her as the benefit of her son's basic life insurance.

9

Consequently, Defendant's decision to pay Plaintiff $37,000.00 based on its interpretation of Guaranteed Issue Amount was not de novo wrong.   Therefore, the decision will not be overturned.

>    2.    Reasonable Grounds for Decision

Had the Court found that Defendant's decision was wrong, the next step would have been to determine if Plaintiff's interpretation of the Policy was correct or at least reasonable.  *See* ***HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.***, 240 F.3d 982, 994 (11th Cir. 2001) ("If the court determines that the claims administrator's interpretation is 'wrong,' the court then proceeds to decide whether the claimant has proposed a 'reasonable' interpretation of the plan.") (quoting ***Lee v. Blue Cross/Blue Shield***, 10 F.3d 1547, 1550 (11th Cir.1994)).   Plaintiff argues that Guaranteed Issue Amount is an ambiguous term open to multiple interpretations.   Because "contra proferentem applies to ERISA plans," after finding Defendant's decision wrong or the phrase Guaranteed Issue Amount ambiguous, the Court would be required to construe "the ambiguities . . . against the drafter of a document;" and, "as such, [Plaintiff's] interpretation [would be] viewed as correct."  ***HCA***, 240 F.3d at 994 n.24.   Even though the Court would have to accept Plaintiff's definition of Guaranteed Issue Amount as correct, Plaintiff would "not necessarily prevail."  ***Id.***   Plaintiff would only succeed if the Court were to determine that Defendant's wrong interpretation was also unreasonable.  ***Id.***   Because the Court agrees with Defendant's interpretation of Guaranteed Issue Amount, the Court cannot find Defendant's interpretation unreasonable.   Consequently, a second and separate reason for affirming Defendant's decision is that even if both Defendant and the Court are wrong,

the decision is reasonable because Guaranteed Issue Amount is a term commonly associated with underwriting, and not with payable benefits.  *See* 11/15/04 NATUNDLH 18 (stating that guaranteed issue policy is one without medical underwriting, also known as simplified issue).

**III.        CONCLUSION**

According to the foregoing reasoning, Defendant's interpretation of Guarantee Issue Amount is affirmed and its decision to pay Plaintiff a $37,000.00 total life insurance benefit was correct.   Therefore, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.


SO ORDERED, this 16th day of May, 2005.


   s/ Duross Fitzpatrick_____

DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/has

11